Eastern District of Kentucky
FILED
JAN 31 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CIVIL CASE NO. 05-119-DCR

JOHNNY GIBSON,                      PETITIONER

VS.        **REPORT AND RECOMMENDATION**

JOHN MOTLEY, WARDEN,             RESPONDENT

       This matter is before the Court upon the "Petition for Writ of Habeas Corpus" (DE#1) pursuant to 28 U.S.C. §2254 by the state prisoner, Johnny Gibson, through counsel. This matter has been referred to the Magistrate Judge for initial consideration and a Report and Recommendation. Having considered the record, including the Petition (DE#1), Answer/Response and Supporting Memorandum (DE#11, 12), Appendix with Rule 5 Attachments (DE#13), and Reply (DE#19), the Magistrate Judge makes the following proposed findings of fact and conclusions of law:

## I. Proposed Finding of Facts

       Before discussing the facts of record, it is noted that the petitioner has set forth his own alibi theory as "fact" (see e.g., DE#19, p. 5) without offering any "clear and convincing" evidence that would rebut the presumption of correctness afforded to state findings of fact under 28 U.S.C. §2254(e)(1). Moreover, the jury rejected Gibson's alibi and convicted him of robbery and burglary. "A jury's verdict represents a finding that a crime was committed as alleged in the indictment." United States v. Tosh, 330 F.3d 836, 842 (6th Cir. 2003), quoting United States v. Henson, 848 F.2d 1374, 1385 (6th Cir. 1988), *cert. denied,* 488 U.S. 1005 (1989). The following facts are taken from the state record in this case.

       On May 22, 1995, Harlan and Lucy Davidson were asleep in their home in Clay County, Kentucky. When Harlan was awakened by his wife's screams at approximately 3:45 a.m., he encountered a man wearing a ski mask and carrying a gun. The intruder hit Harlan on the head. The intruder had just beaten Lucy unconscious. Both victims were then tied up with duct tape. Harlan testified that

there was more than one intruder and that they ransacked the house and stole various items, including guns, knives, VCR, and a wallet with $1,100.00 in currency. The intruders ripped the phone cord from the wall and drove off in the victims' Chevrolet truck, which was later found abandoned.

Harlan managed to free himself and called the police from a neighbor's residence. When Trooper Jack Riley arrived, Harlan told him that after he heard Lucy scream, one of the masked men had stuck a gun in his face and hit him on the head. He told the trooper that he had recognized the voice of Johnny Gibson, Lucy's half-brother. He also described a truck that had "cased" their house earlier. The truck matched the description of a truck owned by Harold Glen Parker, who was married to Lucy's sister. Police found a ski mask in this truck. Lucy was hospitalized for her injuries, which included lacerations that required stitching and a concussion from the blows to her head.

Johnny Gibson was indicted in Clay County Circuit Court for first degree burglary, two counts of first degree robbery, theft over $300.00, first degree conspiracy to commit robbery, and with being a persistent felony offender, second degree. Harold Parker was also indicted as a co-defendant and co-conspirator. Parker pleaded guilty, and pursuant to his plea agreement, testified as a witness for the Commonwealth. At the jury trial, he admitted that he had driven Gibson and himself to the Davidson residence on the day of the robbery and that they had returned there later that evening. Parker testified that Gibson had stated he was going inside to "take what he wanted". Parker testified that Gibson had gone into the residence, and that he (Parker) had remained in his vehicle.

Parker further testified that Gibson borrowed a gun from him before going into the Davidson residence, and that, after returning to the vehicle after the robbery, Gibson told him that he had entered by climbing through a kitchen window and had struck Lucy on the head. He testified that Gibson showed him items, including a wallet, money, and guns, that he had just stolen. Gibson gave him back his gun, and Parker then took the stolen guns and sold them. Harlan Davidson also testified about the events and indicated he had recognized Gibson's voice during the robbery. Gibson's defense theory was an alibi consisting of the testimony of a former girlfriend who claimed that on the night of the robbery, Gibson had been with her at her apartment.

On December 11, 1995, the jury returned a guilty verdict against Gibson for burglary and robbery. The trial court sentenced him, in accordance with the jury's recommendation, to twenty (20) years imprisonment for burglary in the first degree and twenty (20) years for robbery in the first degree of Lucy Davidson, to

run consecutively, for a total sentence of forty (40) years imprisonment. Petitioner obtained new counsel and brought a direct appeal, alleging 1) that the trial court should have given a jury instruction on the lesser included offense of second degree robbery,[1] and 2) that the trial court should have granted a directed verdict. The Kentucky Supreme Court unanimously affirmed petitioner's conviction in an unpublished decision on March 27, 1997. See DE#13, Appendix, Exh. 4, for copy of opinion. The time to file for certiorari expired ninety days later, and Gibson did not seek certiorari.

On March 24, 1998, he filed a state motion pursuant to RCr 11.42, alleging that his trial counsel had been "ineffective" because 1) counsel had chosen not to subpoena an allegedly "exculpatory" witness, Betty Parker (Gibson's own sister who lived out-of-state), and 2) counsel had not moved for recusal of the trial judge, who according to Gibson, had a personal relationship with the victims. A special judge, Judge Jerry D. Winchester, was assigned to the 11.42 proceeding. After holding an evidentiary hearing, and after giving Gibson additional time to submit any evidence, the special judge found no merit in the motion and denied it. Gibson filed for "reconsideration", which was denied on April 7, 2003.

The Kentucky Court of Appeals unanimously affirmed on September 10, 2004. *Gibson v. Commonwealth*, 2004 WL 2011284 (Ky. App.); and see, DE#13, Appx. Exhibit 10 for copy of opinion. The Kentucky Supreme Court denied discretionary review on March 9, 2005. Gibson, through the same post-conviction counsel, then filed the present federal habeas petition on March 11, 2005,[2] reasserting the same two grounds for ineffective assistance of counsel.

## II. Issues Presented

Gibson again argues that his trial counsel was constitutionally "ineffective" because 1) he did not subpoena Betty Parker as an allegedly "exculpatory"

---

[1] The Kentucky Supreme Court pointed out that "the distinguishing element between First-Degree Robbery and Second-Degree Robbery in this case is whether, in the course of committing the theft, [Gibson] inflicted a physical injury upon Lucy Davidson, K.R.S. 515.020(1)(a), or whether he merely used physical force upon her. K.R.S. 515.030(1)." See DE#13, Appx. Ex. 4, for copy of direct appeal decision in Gibson v. Commonwealth, Case #96-SC-055-MR. Lucy's injuries were stipulated at trial.

[2] Gibson is represented by counsel, thus the "mailbox rule" for pro se prisoners does not apply.

witness, and 2) he did not move for recusal of the trial judge. On federal habeas, review is limited to consideration of whether the state court's decision on either issue was "contrary to or an unreasonable application of clearly established Supreme Court precedent" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

### III. Proposed Conclusions of Law

**Statutory Jurisdiction**

Pursuant to 28 U.S.C. §2254(a), "... a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. The statute requires that the petitioner be 'in custody' when the petition is filed. See *Carafas v. Lavelle*, 391 U.S. 234, 237 (1968); *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 982 (1998).

When Gibson filed this federal habeas petition, he was incarcerated under the challenged state conviction at the Eastern Kentucky Correctional Complex in West Liberty, Kentucky. Although Gibson indicates that he has subsequently been released on parole, see DE#19, p. 1, this Court still has jurisdiction to consider the petition. *Spencer*, 118 S.Ct. at 982 (holding that a prisoner's release from prison after his petition has been filed does not make the petition "moot"); *Sanders v. Freeman*, 221 F.3d 846, 850-51 (6th Cir. 2000)(same).

**Applicability of AEDPA, Successiveness**

The present habeas petition was filed subsequent to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the AEDPA fully applies to this petition. *Williams v. Taylor*, 120 S.Ct. 1495, 1518 (2000); *Penry v. Johnson*, 532 U.S. 782, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001). The AEDPA requires a district court to initially review a federal habeas petition to determine if it is "successive". 28 U.S.C. §2244(a); *In re Sims*, 111 F.3d 45 (6th Cir. 1997)(per curiam). Gibson indicates he has not filed any other federal petitions, and the record does not reflect any.

## AEDPA One-Year Period of Limitations

The AEDPA provides that a one-year period of limitations applies to habeas petitions and runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" or several other starting dates not applicable here. 28 U.S.C. §2244(d)(1). The Kentucky Supreme Court affirmed Gibson's conviction on March 27, 1997, and he had ninety days to file for certiorari, see *Bronough v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000), although he did not do so.

The time during which Gibson's 11.42 motion was pending (from March 24, 1998 to March 9, 2005, followed by 90 days to file for certiorari)[3] was "tolled" by 28 U.S.C. §2244(d)(2), which provides for tolling of the one-year period of limitations during the time that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." Gibson used less than one year of untolled time before filing his federal petition, hence, this petition is timely.

## Exhaustion

Pursuant to 28 U.S.C. §2254(b)(1-2), a district court may not grant habeas relief to a prisoner unless available state remedies have been exhausted. To satisfy the exhaustion requirement, a state prisoner must complete any appeals through the *highest* level of the state courts before seeking federal habeas relief. *Rogers v. Howes*, 144 F.3d 990 (6th Cir. 1998); *Hafley v. Sowders*, 902 F.2d 480, 485 (6th Cir. 1990); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). In doing so, the defendant must "fairly present the substance of each of his federal constitutional claims to the state courts" before raising such claim on federal habeas. *Carter v. Bell*, 218 F.3d 581 (6th Cir. 2000); see also, *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995).

Generally, if a petitioner raises issues, such as ineffective assistance of trial counsel, in a state post-conviction motion pursuant to RCr 11.42, he must also

---

[3]In an en banc opinion rendered October 22, 2003, Abela v. Martin, 348 F.3d 164, 171 (6th Cir. 2003), cert. denied, 541 U.S. 1070 (2004), the Sixth Circuit Court of Appeals held that tolling applies during the time in which a defendant could file a petition for certiorari following a state court's denial of post-conviction relief, overruling Isham v. Randles, 226 F.3d 691, 695 (6th Cir. 2000).

exhaust state remedies with regard to those claims. See *Hafley*, 902 F.2d at 485; *Silverburg*, 993 F.2d at 126; *Weigand v. Wingo*, 380 F.2d 1022 (1967)("the district court was correct in refusing to grant a writ of habeas corpus because of the failure of appellant to exhaust the remedies available to him under Kentucky Rules of Criminal Procedure, Rule 11.42..."); see also, e.g., *White v. O'Dea*, 129 F.3d 1266, 1997 WL 693060 (6th Cir. (Ky.)); *Johnson v. Collins*, 145 F.3d 1331, 1998 WL 228029 (6th Cir. (Mich.). In his 11.42 motion, Gibson argued that his trial counsel was constitutionally ineffective on two grounds. Gibson fairly presented these constitutional claims and pursued review through the highest level of the state courts. Thus, those two claims are exhausted for purposes of federal habeas review.

**Standard for Habeas Review**

Federal habeas review is governed by the standard set forth in the AEDPA:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

The United States Supreme Court has explained that a state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). In *Williams*, the Supreme Court explained that an "unreasonable application" occurs when "the state court identifies the correct legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The United States Supreme Court emphasized in *Bell v. Cone*, 122

S.Ct. 1843, 1850-51 (2002) that the focus of inquiry under the "unreasonable application" prong is whether the state court's application of clearly established federal law was "objectively unreasonable". See also, *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004)("when a state court's application of governing federal law is challenged in a habeas petition, the decision must not only be shown to be erroneous, but objectively *unreasonable*")(emphasis in original), citing *Middleton v. McNeil*, 124 S.Ct. 1830 (2004) and *Yarborough v. Gentry*, 540 U.S. 1 (2003).

The AEDPA also provides in 28 U.S.C. §2254(e)(1) that "a determination of a factual issue made by a State court shall be presumed to be correct" and that the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

**Issue 1: Whether the State Court Denial of Gibson's 11.42 Claim that His Trial Counsel was Ineffective for Failing to Subpoena an Allegedly Exculpatory Witness was "Contrary to or an Unreasonable Application of Clearly Established Supreme Court Precedent" or "Resulted in a Decision That Was Based on an Unreasonable Determination of the Facts in Light of the Evidence Presented in the State Court Proceeding"**

The Kentucky Court of Appeals correctly identified the relevant Supreme Court precedent governing Gibson's claim of constitutionally ineffective trial counsel. See *Gibson*, 2004 WL 2011284, at *1 ("An ineffective assistance of counsel claim requires that the movant satisfy the two-pronged test set forth in *Strickland v. Washington*."). Hence, the "unreasonable application" prong of §2254(d)(1) governs the analysis here. See, e.g., *Hunt v. Mitchell*, 261 F.3d 575, 580 (6th Cir. 2001)(applying the "unreasonable application" prong to claims of ineffective counsel); *Barnes v. Elo*, 2003 WL 21844494, *4 (6th Cir. 2003)(same). A state court unreasonably applies Supreme Court precedent "if the state court identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular prisoner's case." *Williams*, 529 U.S. at 407, 120 S.Ct. at 1521.

To prove "ineffectiveness", Gibson had to show objectively deficient performance by his trial counsel and resulting prejudice to his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 108 L.Ed2d 674 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* at 686. "A[n] attorney's merely losing, being wrong, or miscalculating is not enough..."

*McQueen v. Scroggy*, 99 F.3d at 1315 (6th Cir. 1996). The United States Supreme Court has pointed out that "[t]here is a strong presumption that an attorney's performance falls within the wide range of reasonable professional assistance." *Strickland*, 104 S.Ct. at 2065.

In applying *Strickland* to Gibson's post-conviction claims, the Kentucky Court of Appeals held that:

> "Gibson contends that his trial counsel prejudiced his defense when counsel failed to subpoena Betty Parker, his sister and codefendant's wife, as a defense witness. Parker, an Indiana resident, did not appear at the RCr 11.42 hearing. Instead, Gibson relied on testimony given by a detective at the grand jury proceeding to the effect that Parker told him that her husband, Gibson's codefendant, told her to lie to investigators and tell them that he was in Indiana on the night of the offense. Obviously, this testimony was hearsay and inadmissible in a trial proceeding as well as in an RCr 11.42 proceeding," *Gibson*, 2004 WL 2011284, at *1, citing *Foley v. Commonwealth*, Ky., 17 S.W.3d 878 (2000).

The Kentucky Court of Appeals discussed *Bowling v. Commonwealth*, Ky., 80 S.W.3d 405 (2002), a case that was very similar to Gibson's because the materiality of the testimony of the out-of-state witness was "far from apparent on its face", it was speculative as to whether the witness's trial attendance could have been secured under the Uniform Act, and there was "no basis to consider how an out-of-state court would have ruled on the question of undue hardship". The Kentucky Court of Appeals cited *Bowling* for its holding that "there can be no ineffective assistance for failing to attempt to introduce inadmissible evidence or in failing to subpoena a witness whose attendance at trial cannot be secured. *Id.* at 418 (explaining that "the failure to compel attendance of an out-of-state witness at a criminal trial is not ineffective assistance of counsel unless the movant demonstrates that the absent witness's testimony was material and that the witness's attendance could have been secured under KRS 421.250(1).")." The Kentucky Court of Appeals pointed out that Gibson had done neither:

> "In this case, Parker did not attend the RCr 11.42 hearing because she was "unavailable." There is no evidence that she would have been available on the date of trial or that her testimony would have aided the defense. Other than inadmissible hearsay, the circuit court and this court have no means of

Page 8 of 15

determining what her testimony would have been or if it would have affected the outcome of the trial." *Gibson,* 2004 WL 2011284, at *1.

The state court's holding does not amount to an "unreasonable application" of *Strickland*. The Kentucky Court of Appeals pointed out that Gibson had not shown any objective deficiency in his trial counsel's alleged "failure" to subpoena this out-of-state witness. Gibson did not show that he could have secured her trial attendance under state law, and in fact, did not secure her attendance for the 11.42 hearing. He did not even submit an affidavit of such alleged witness, his own sister. Although given the opportunity to substantiate his post-conviction claims, Gibson failed to do so. The special judge at the evidentiary hearing aptly pointed out that "there was no exculpatory witness to be called".[4]

The Kentucky Court of Appeals pointed out that Gibson was relying on inadmissible hearsay to prove his post-conviction claim. Although Gibson makes the attenuated and conclusory allegation on habeas that he was therefore denied the right to present a 'complete defense', see DE#1, p. 5, ¶A, the Sixth Circuit Court of Appeals observed in *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) that:

> "...the Supreme Court has made it perfectly clear that the right to present a 'complete' defense is not an unlimited right to ride roughshod over reasonable evidentiary restrictions. A defendant 'does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.' *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 654, 98 L.Ed.2d 798 (1988). Rather, [a defendant] 'must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)."

It is well-settled that a defendant's right to present evidence is not unlimited, but rather, is subject to reasonable restrictions. *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 1264, 140 L.Ed.2d 413 (1998). Gibson simply failed to substantiate his claim of ineffective assistance of trial counsel.

---

[4] Gibson has not even presented an affidavit of the supposed "witness" indicating that she might actually have testified as he claims.

As the state court observed, there was no indication that Betty Parker would have been available to testify at trial, much less that she would have testified as Gibson suggests. Even if she had, her suggested testimony was not "exculpatory", and its possible content remains entirely speculative. Although Gibson insists that his sister Betty would have testified that he and Harold Parker were not at home on the evening of the robbery, such testimony could hardly be considered "exculpatory".[5] In rejecting Gibson's claim, the Kentucky Court of Appeals referred to *Bowling* for the observation that the "materiality" of the testimony of the out-of-state witness was "far from apparent on its face".

Although Gibson complains that his counsel did not call this potential witness, he acknowledges that his counsel did send an investigator to speak with her prior to trial. DE#19, p.6. The record reflects that the content of her anticipated testimony would have been consistent with Gibson's guilt, i.e. she would have testified that Gibson and his co-defendant were not at home on the evening of the robbery and that the two men often "hung out" together. Such testimony would have tended to incriminate Gibson (i.e. they were not at home because they were committing the robbery), and counsel obviously would not want to present it. Petitioner's characterization of Betty Parker as a 'material exculpatory' witness is inaccurate.

To the extent Gibson claims that such testimony would have corroborated his alibi, the record reflects that Betty Parker gave a statement indicating that Gibson had told her he was going to Dawn's house, but that she (Betty) could not confirm he actually went there. See DE#13, Exh. 12, p. 7, citing TR 223. She also indicated to the investigator that Gibson did not have a car and couldn't get anywhere on his own. In light of the fact that Harold Parker admitted at trial that he and Gibson had driven together in Parker's truck to the Davidson's premises on the evening of the robbery, and given that the victim Harlan Davidson recognized Gibson's voice from behind the ski mask during the robbery, Betty's testimony would have suggested that Gibson had simply lied to her about where he was going that evening.

If Betty Parker had testified that the both men were not home that evening, it would have been consistent with the damaging admissions of the co-defendant. Moreover, Betty Parker's statement to the investigator also revealed that she had talked with the victim Harlan Davidson the day after the robbery and that he had indicated that Gibson "got away". See DE#13, Exh. 12, p. 8, citing TR 164. It is

---

[5]Betty was married to co-defendant Harold Parker, and Gibson lived with them.

abundantly obvious why defense counsel would not want Betty on the witness stand. Even assuming *arguendo* that her attendance at trial could have been secured, the Commonwealth correctly pointed out that defense counsel did not "fail" to call Betty Parker, but rather, made a sound strategic decision to not call her as a witness. In fact, the record reflects that the prosecution attempted to secure her trial attendance, but did not accomplish such task. As Gibson failed to show objectively deficient performance by his trial counsel, or any resulting prejudice, the state courts appropriately rejected Gibson's claim of ineffective assistance of trial counsel.

In *Williams v. Taylor*, 120 S.Ct. 1495, 1513 (2000), the United States Supreme Court observed that the prejudice component of the *Strickland* test "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair....Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Even unreasonable errors "do...not warrant setting aside the judgment of a criminal proceeding if the error[s] had no effect on the judgment." *Strickland*, 466 U.S. at 691. Consistent with *Strickland*, the Kentucky Court of Appeals cited *Bowling* for the holding that "there can be no ineffective assistance for failing to attempt to introduce inadmissible evidence or in failing to subpoena a witness whose attendance at trial cannot be secured." The Kentucky Court of Appeals also held that Gibson had not shown that Betty Parker's "testimony would have aided the defense." Gibson has not shown that the decision by the Kentucky Court of Appeals was "an unreasonable application" of *Strickland* or any other clearly established Supreme Court precedent.

The decision of the Kentucky Court of Appeals in Gibson's case was also not based on an "unreasonable determination of the facts", given the evidence presented in state court proceedings. Gibson failed to produce his alleged witness at the 11.42 hearing, and his "evidence" consisted of inadmissible hearsay. He mischaracterized the significance of Betty Parker's suggested testimony. Gibson failed to substantiate his 11.42 claims and cannot now complain that the decision by the Kentucky Court of Appeals was based on an "unreasonable determination of the facts".

**Issue 2: Whether the State Courts' Denial of Gibson's Claim that His Trial Counsel was Ineffective for Not Moving the Trial Judge to Recuse from Petitioner's Trial was "Contrary to or an Unreasonable Application of**

## Clearly Established Supreme Court Precedent" or Resulted in a Decision That Was Based on an Unreasonable Determination of the Facts in Light of the Evidence Presented in the State Court Proceeding"

Gibson bases his second ground of "ineffectiveness" on his belief that the trial judge should have recused from the case because he had attended a few social events, including a large one years earlier in 1992, at which members of the extended family of the defendant and victims were present.[6] Gibson argues that his counsel should have moved for the trial judge's recusal because the judge was acquainted with the family of the individuals involved in the case. Gibson argues that the state court adjudication of his 11.42 claim of ineffectiveness resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding". DE#19, p. 17. Specifically, Gibson claims that:

> "Harlan Davidson was one of the victims and acted as a major Commonwealth witness at petitioner's trial in Clay Circuit Court. Judge Maricle regularly attended family birthday party celebrations for Harlan Davidson and his father-in-law at Mr. Davidson's residence. Judge Maricle stated at a post-conviction recusal hearing that he had attended Mr. Davidson's birthday party in 1992 and another year that he could not remember. The judge stated that he also attended the Davidson gathering in 1998. Petitioner told his trial attorney about Judge Maricle's friendship with Harlan Davidson, but his attorney did nothing to request that the judge disqualify himself." DE#1, p. 5 ¶B.[7]

After an evidentiary hearing at which Gibson was represented by counsel, the special judge found that the trial judge was merely an acquaintance of the family of defendant and his victims. Some degree of social familiarity is not particularly surprising in a small rural community. The special judge further found that "nothing was presented in the record to indicate that the trial judge did not do everything within his power to see that the Defendant received a fair trial."

---

[6]Gibson and his victims are related. The special judge noted that "the Defendant testified that the trial judge was also a friend of his family." See DE#13, Appx. Ex. 5, for copy of "Order Denying RCR 11.42 Motion".

[7]Gibson was convicted in 1995, hence, a 1998 social event is of little or no relevance.

DE#13, Appx. Ex. 5, p. 1. In denying Gibson's claim of ineffectiveness, the special judge found that there was no basis for counsel to have moved for recusal under state law and that Gibson had not substantiated his post-conviction claim of ineffectiveness.

On appeal, the Kentucky Court of Appeals affirmed, holding that:

> "Gibson also alleges that trial counsel was ineffective because there was no motion made to recuse the trial judge, Judge Maricle. Judge Maricle had, prior to trial, attended various social events where both the victim and appellant's father were present. Gibson contends that Judge Maricle's friendship with his own family gave the appearance of impropriety and required recusal. He is unable, however, to point to any facts demonstrating bias or prejudice sufficient to prove that Judge Maricle was unable to fairly or impartially try the case. *Howerton v. Price,* Ky., 449 S.W.2d 746 (1970)." *Gibson,* at *2, citing KRS 26A.015.

In other words, Gibson had shown no resulting prejudice from his counsel's decision not to move for recusal of the trial judge. The Kentucky Court of Appeals pointed out that "[t]he burden is upon the accused to establish convincingly that he was deprived of some substantial right which would justify the extraordinary relief afforded by the post conviction proceedings provided in RCr 11.42." Gibson did not do so. Gibson produced no evidence suggesting any actual bias, and the Kentucky Court of Appeals held that Gibson was unable "to point to any facts demonstrating bias or prejudice sufficient to prove that Judge Maricle was unable to fairly or impartially try the case." *Gibson,* at *2.

Gibson did not show any objectively deficient performance by his counsel or any resulting prejudice to his defense, and thus, the Kentucky Court of Appeals rejected his ineffectiveness claim. In disputing the decision of the Kentucky Court of Appeals, he has not shown that such court unreasonably applied *Strickland* in rejecting his ineffectiveness claim, nor has he shown that the adjudication of such claim resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding".

It is noted that after trial, Gibson obtained different counsel on direct appeal. However, such counsel did not raise any issues of recusal or judicial bias on appeal, and thus Gibson's underlying ground for his present post-conviction "ineffectiveness" claim is defaulted. Such underlying issue is a matter of state law not cognizable on habeas review, and state court interpretations of state law are binding on federal courts. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991);

*Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

Within the context of his ineffectiveness claim, Gibson did not show anything close to a "predisposition ... so extreme as to display clear inability to render fair judgment." *Liteky v. United States,* 510 U.S. 540, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); and see, e.g., *Burton v. Jones*, 321 F.3d 569, 577 (6th Cir. 2003)(discussing "bias" claim). The Kentucky Court of Appeals found that Gibson had not shown any prejudice under the *Strickland* test. Gibson has failed to show that he is entitled to any habeas relief.

## V. Certificate of Appealability

The AEDPA provides that a COA should issue "only if the applicant has made a substantial showing of the denial of a constitutional right", 28 U.S.C. §2253(c)(2), and shall indicate which specific issues satisfy the "substantial showing" requirement, 28 U.S.C. §2253(c)(3); *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2002)(requiring an "individualized determination of each claim"); *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed2d 542 (2000). The Supreme Court has explained that to obtain a COA, "a prisoner must demonstrate that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Banks v. Dretke*, 124 S.Ct. 1256, 1280 (2004), citing *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

It is recommended that jurists of reason would not find that either of Gibson's ineffectiveness claims set forth a debatably valid constitutional claim. The state court correctly identified the *Strickland* standard as the governing law and accurately pointed out the lack of merit in both "ineffectiveness" claims. With respect to counsel's choice not to call Gibson's sister as a witness, the state court found no objectively deficient performance by counsel, or any resulting prejudice, and such conclusions are supported by the record. Gibson did not show that it was even possible to obtain the trial attendance of such out-of-state witness, much less that her purported testimony would have been exculpatory or otherwise material. The record indicates very good reasons why counsel chose not to call this witness. With respect to Gibson's allegation that counsel was ineffective for not moving the trial judge to recuse, the state court found that counsel had no basis to seek recusal under state law, that Gibson had not shown any bias of any kind, and that counsel was therefore not ineffective on such basis. These claims are not deserving of further encouragement, and Gibson is not entitled to a COA.

Accordingly,

## **RECOMMENDATION**

It is **RECOMMENDED** that:

a) the "Petition for Writ of Habeas Corpus" (DE#1) by the petitioner should be **DISMISSED with prejudice**; and

b) a certificate of appealability should **not** be issued.

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See *Howard v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir. 1991). A party may file a response to another party's objection within ten (10) days after being served with a copy thereof. Rule 72(b), Fed. R.Civ.P.

This the 31st day of January, 2006.



Signed By:
J. B. Johnson, Jr.
United States Magistrate Judge